IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**LYNETTE D. PITTS,**

      **Plaintiff,**

vs.   No.  10cv0790 DJS

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's (Pitts's) Motion to Reverse or Remand Administrative Agency Decision **[Doc. No. 16]**, filed on January 17, 2011, and fully briefed on March 31, 2011.  On September 1, 2009, the Commissioner of Social Security issued a final decision denying Pitts's claim for disability insurance benefits and supplemental security income.  Pitts seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds that the motion to remand is not well taken and will be **DENIED**.

### I.  Factual and Procedural Background

Pitts, now forty-six years old (D.O.B. June 9, 1964), filed her application for disability insurance benefits and supplemental security income on February 21, 2007, alleging disability since February 1, 2007 (Tr. 9), due to anxiety and drug addition[1] (Tr. 11).  Because Pitts's insured

---

[1] Pitts completed an intensive drug-abuse rehabilitation program in 1997 (Tr. 206, 211) and testified she had "been clean since 2004."  Tr. 26.  However, the record indicates that in

status expired on March 30, 2008, she must prove she was totally disabled prior to that date. *Henrie v. Dep't of Health & Human Services*, 13 F.3d 359, 360 (10th Cir. 1993). Pitts has a GED and past relevant work as a cashier. On September 1, 2009, the ALJ denied benefits, finding Pitts was not disabled as she retained the residual functional capacity (RFC) "to perform light unskilled work which includes no exposure to concentrated environmental pollutants and public contact is no more than incidental to the work performed." Tr. 13. The ALJ further found Pitts's "statements concerning the intensity, persistence and limiting effects of [her alleged symptoms] were not credible to the extent they are inconsistent with the above residual functional capacity assessment." Tr. 14. On June 24, 2010, the Appeals Council denied Pitts's request for review of the ALJ's decision. Tr. 3. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Pitts seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. *Hamilton v. Secretary of Health and Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial

---

early 2008 she "recently relapsed and had started using cocaine again and is being sent to Mental Health for further treatment." Tr. 305.

evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

"'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)(quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). The court "may not 'displace the agenc[y]'s choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zolantski*, 372 F.3d at 1200).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.

3

20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse and remand, Pitts makes the following arguments: (1) the ALJ improperly disregarded the effect her obesity had on her RFC contrary to Social Security Ruling 02-1p; (2) the ALJ failed to consider the reasons she was not compliant with prescribed treatment before determining her RFC contrary to Social Security Ruling 82-59 and 20 C.F.R. §§404.1530 and 416.930; and (3) the ALJ improperly disregarded the opinion of the consultative examiner's Global Assessment of Functioning (GAF) score.[2]

---

[2] Global Assessment of Functioning score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning.  American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 32 (Text Revision 4th ed. 2000) (DSM-IV-TR).  The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death.). DSM-IV-TR at 34.

**A.  RFC Determination**

Residual functional capacity is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2, §200.00(c).  In arriving at an RFC, agency rulings require an ALJ to provide a "narrative discussion describing how the evidence supports" his conclusion.  *See* SSR 96-8p, 1996 WL 374184, at *7.  The ALJ must "discuss the individual's ability to perform sustained work activities n an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the record."  *Id.*  The ALJ must also explain how "any material inconsistencies or ambiguities in the case record were considered and resolved."  *Id.*

Pitts contends the ALJ "violated Social Security Ruling 02-10 when evaluating [her] obesity by improperly disregarding its affects on her residual functional capacity without regard to the fact that [she] was never prescribed a treatment for her obesity.  Specifically, Pitts contends the ALJ found that her '"[o]besity can have a significant effect on sleep apnea and hypertension and her overall health' but purported to disregard the symptom magnification affects of [her] obesity because 'she admitted to eating poorly despite recommendations not to.'" Pl.'s Mem. Support of Mot. Remand (Doc. No. 16-1) at 17(emphasis added).[3]  Pitts contends the ALJ failed to comply with Social Security Ruling 02-1p because "she was never prescribed

---

[3] Pitts misquotes the ALJ's decision. In reality, the ALJ's decision states:

> Also she has not followed through with recommendations such as modifying her eating habits.  She was reported to be obese and had high-risk obesity.  She admitted to eating poorly and not exercising at all.  Further the record suggested that she continued to smoke despite recommendations not to.

Tr. 17.  Clearly, the ALJ is referring to the recommendation not to continue smoking.

5

treatment" and received only "mere recommendations and encouragement."  Tr. 18.  Pitts's argues that since she was not prescribed treatment for her obesity, "the ALJ may not simply disregard symptoms of obesity when a claimant has not lost weight, unless 'there is a failure to follow *prescribed* treatment."

Pitts misconstrues the ALJ's decision.  The ALJ found Pitts's obesity to be severe at step two of the sequential evaluation process and noted, in pertinent part, as follows:

> Pursuant to Social Security Ruling 02-1p, <u>I have considered the effects of the claimant's obesity by itself and in combination with other impairments</u>.  There is no evidence that the claimant's obesity by itself has rendered the claimant [unable] to ambulate effectively.  There is no evidence that the claimant's obesity has increased the severity of any co-existing impairments to the extent that the combination of impairments meets or equals the criteria of a Listing Section.

Tr. 12.  Thus, the ALJ did consider Pitts's obesity and how it affected her other impairments.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)("Our general practice . . . is to take a lower tribunal at its word when it declares it has considered a matter.").  However, based on the record, the ALJ found Pitts's obesity, singly or in combination with her other impairments, was not disabling.  Specifically, the ALJ found:

> The record does not contain any opinion from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those that I have determined in this decision.  In sum, I find that the medical evidence does not show any significant functional limitations which would prevent the claimant from engaging in work-related activities consistent with my residual functional capacity assessment.

Tr. 17.  In determining Pitts's RFC, the ALJ considered her mental impairments, noting:

> The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06.  In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration,

>persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.
>
>I find the medical evidence has demonstrated the following: In activities of daily living, the claimant has no restriction. In social functioning, the claimant has moderate difficulties. With regard to concentration, persistence or pace, the claimant has moderate difficulties. As for episodes of decompensation, the claimant has experienced no episodes of decompensation.
>
>Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.
>
>I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.
>
>The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listing in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

Tr. 12-13. Ultimately, the ALJ found Pitts retained the RFC to "perform light unskilled work which includes no exposure to concentrated environmental pollutants and public contact is no more than incidental to the work performed." Tr. 13. Based on this RFC, at step four of the sequential evaluation process, the ALJ found Pitts could not perform her past relevant work. At step five of the sequential evaluation process, with assistance from the vocational expert, the ALJ concluded that Pitts could perform other jobs that existed in significant numbers in the national economy. Tr. 18.

Social Security Ruling 02-1p states, "Before failure to follow prescribed treatment (under Social Security Ruling 82-59) for obesity can become an issue in a case, we must first find that the individual is disabled because of obesity or a combination of obesity and another impairment(s)." SSR 02-1p, 2000 WL 628049, *8 (2002). Because the ALJ found Pitts's obesity, singly or in combination with her other impairments, was not disabling, Social Security Ruling 82-59 is inapplicable. Thus, the ALJ did not have to engage in a "failure to follow prescribed treatment" analysis under Social Security Ruling 82-59.

Finally, it was appropriate for the ALJ to consider Pitts's not being compliant with some of her treatment. The ALJ found:

> The record suggests she has not been compliant with following treatment recommendations such as follows: She indicated she did not take her medications because she could not afford them. She indicated that medications made her feel a little better. I am aware that the claimant has made statements indicating that she could not afford medication; however, she has made no effort to obtain indigent medical care. There are government subsidized health care facilities that provide free or low cost health care to people of limited means.

Tr. 17.

As already noted, the ALJ found Pitts's was not disabled. Significantly, the ALJ did not find Pitts was disabled because she was not compliant with medical treatment. The ALJ simply stated "[t]he record suggests if the claimant is compliant with medical treatment it can be effective in <u>controlling</u> her symptoms." Tr. 17 (emphasis added). This statement is supported by the record. Tr. 285 (March 12, 2009 visit to UNM Family Health- "Amitriptyline 25 milligrams one by mouth at bedtime as needed, although the patient reports that she has not needed this since starting the continuous positive airway pressure machine."); Tr. 287 (March 12, 2009 visit to UNM Family Health Clinic- "History of sleep apnea, improved now that the patient is on continuous positive airway pressure machine."); Tr. 300 (April 24, 2008 visit to

UNM Family Health- "The patient is currently off of her medications with exacerbation of [depression] symptoms."); Tr. 280 (April 16, 2009 visit to UNM Family Practice Center- ""Ms. Pitts further stated that Effexor does not help and on the other hand said that she would not be able to stand being here in this small clinical room without her medications, which she took before she came.").

Pitts also claims she could not afford her medication or counseling.  However, the record contains no evidence she sought medical treatment but was refused for an inability to pay.  *See Galdean v. Chater,* 74 F.3d 1249, 1996 WL 23199 (10th Cir.1996)(unpublished opinion)(citing *Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir. 1992)(failure to seek low-cost medical treatment and lack of evidence claimant had been denied medical care because of financial condition supports determination that claimant's financial hardship was not severe enough to justify failure to seek medical treatment).  In fact, Pitts acknowledges she saw Dr. Samuel, a psychologist at the UNM Family Practice Center, only two times before her **July 21, 2009** administrative hearing.  Pl.'s Mem. Support Mot. Remand at 14.  On **April 16, 2009**, Dr. Samuel noted, "Ms. Pitts is admitted for **brief** cognitive behavorial therapy to address anxiety and depression, 8 to 12 sessions."  Tr. 280 (emphasis added).  Pitts saw Dr. Samuel a second time on **April 23, 2009.**  There are no other visits to Dr. Samuel documented in the administrative record.

Pitts also contends her anxiety or the "agoraphobia component of her anxiety justifiably excused her occasionally missed, follow-up appointments."  Pl.'s Mem. Support of Mot. Remand at 22.  However, the record indicates that Pitts's missed more than an occasional appointment.  Tr. 279 (Dr. Smoker: "She has been somewhat non-compliant with F/U in the past." ); Tr. 286 ("has not been seen at this clinic for over six months"); Tr. 310 ("The patient

9

was seen one time at physical therapy for evaluation and treatment.  She did not return for continued treatment. Discharge.").  Tr. 301 (April 24, 2008 visit to UNM Family Health, "She has been referred several times to Mental Health but she has not made the effort to follow up with a phone call.").

Moreover, Pitts's agoraphobia did not preclude her from seeking medical attention when she had a cough for a period of 3-4 nights.  Tr. 277 (visit to UNM Family health on 4/30/2009).  Pitts also had the funds to buy the medications prescribed on that day.  Tr. 278.  Pitts also kept her appointment for her pap smear on December 2007, her mammogram on January 2007, and had a Tdap vaccine for pertussis on February 2007.  Tr. 301.  Pitts returned for her follow up appointment to review her laboratory tests on April 24, 2008.  Pitts also was evaluated at the UNM Sleep Disorders Center on May 6, 2008 and had a polysomnogram.  Tr. 297. She returned to the center for her follow up visit on May 18, 2008.  Tr. 296.  Pitts kept her appointment for her upper endoscopy and her appointment for her evaluation at the urogynecology clinic for her stress incontinence.  Tr. 301.  Thus, agoraphobia did not preclude Pitts from keeping many of her appointments.

## B.  GAF Score

Pitts contends the ALJ improperly disregarded the opinion of Dr. Wynne, the consultative examiner, who assessed her with a GAF score of 42.  However, Dr. Wynne did not explain the GAF score he assigned Pitts.  The Tenth Circuit has found that a GAF score, standing alone, without explanation, does not establish an impairment severely interfering with an ability to perform basic work activities.  *See, e.g., Eden v. Barnhart*, 109 Fed. App'x 311, 314 (10th Cir. 2004)(unpublished opinion).

Pitts further argues that the ALJ "violated 20 C.F.R. §§404.1527(d) and 416.927(d) by rejecting the opinion of Dr. Wynne– a treatment source with an *examining* relationship who *supported* his conclusion with detailed observations– in favor of the whole-sale adoption of the opinion of non-examining Scott R. Walker, M.D., who provided only a brief outline of the medical evidence he reviewed in support [of] his opinion." Pl.'s Mem. Support of Mot. Remand at 26 (Doc. No. 16-1). Dr. Wynne, however, is not considered a treating source under the regulations as this requires a relationship of both duration and frequency. Although Dr. Wynne is not considered a treating physician under the regulations, he is considered a "nontreating source." *See* 20 C.F.R. §§ 404.1502, 416.902. A nontreating source means "a physician, psychologist, or other acceptable source who has examined [claimant] but does not have, or did not have, and ongoing treatment relationship" with the claimant. *Id.* This term includes an acceptable medical source who is a consultative examiner for the agency. *Id.* Nonetheless, an ALJ must give "more weight to the opinion of a source who has examined [claimant] than to a source who has not. *Id.*

> Dr. Wynne opined:
>
> She can read and understand basic written instructions, but her concentration and ability to persist at simple work tasks is at least mildly impaired. She could interact well with the general public, but would have difficulty getting along with her coworkers and her supervisors. She might also have difficulty adapting to changes in the workplace. She could recognize obvious hazards, and she could manage her own benefit payments.

Tr. 212. Based on these findings, Dr. Wynne diagnosed Pitts with Polysubstance abuse. Notably, Dr. Wynne did not opine or suggest that Pitts was not able to work.

Under the regulations, "the opinions of State agency medical and psychological consultants . . . can be given weight only insofar as they are supported by evidence in the case

11

record . . . ."  *See* Social Security Ruling 96-6p, 1996 WL 374180, at *2.  In this case, the ALJ properly considered the GAF score Dr. Wynne assigned Pitts and did not give any weight to Dr. Wynne's opinion of a GAF of 42 because it was "inconsistent with the overall medical evidence."  Tr. 14.

Dr. Walker, a nonexamining agency consultant reviewed all the medical evidence and found Pitts was moderately limited in the ability to interact appropriately with the general public, moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors, moderately limited in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, moderately limited in the ability to respond appropriately to changes in the work setting, and moderately limited in the ability to set realistic goals or make plans independent of others.  Tr. 254.  Dr. Walker also did not opine that Pitts was not able to work.  The ALJ considered this opinion along with Dr. Wynne's opinion.  Ultimately, the ALJ found the medical evidence "consistent with [his] residual functional assessment . . . ."  Tr. 17.

## C.  Conclusion

The Court's role is to review the record to ensure that the ALJ's decision is supported by substantial evidence and that the law has been properly applied.  The Court's limited review precludes the Court from reweighing the evidence or substituting its judgment for that of the Commissioner.  *See Woodward v. Shalala*, 30 F.3d 142, 1994 WL 408169 (10th Cir. 1994)(unpublished opinion)("While we acknowledge the presence of evidence in the record which may tend to establish claimant's disability, the determinative conclusion is that there is also substantial evidence to support the ALJ's finding of no disability.  It is not our role on appeal from this agency determination to reweigh the evidence or to substitute our judgment for

that of the [Commissioner]."). As long as substantial evidence supports the ALJ's determination, the Commissioner's decision stands. After such review, the Court finds that the ALJ's determination of nondisability is supported by substantial evidence. Accordingly, Plaintiff's Motion to Reverse or Remand the Administrative Agency Decision is **DENIED.**

**NOW, THEREFORE,**

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse or Remand the Administrative Agency Decision is **DENIED.**

_____
**DON J. SVET**
**United States Magistrate Judge**